1

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

2

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)

3

Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940

4

Walnut Creek, CA 94596

5

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

6

E-Mail:  scott@bursor.com

7

          ltfisher@bursor.com
          apersinger@bursor.com

8

          ykrivoshey@bursor.com

9

*Attorneys for Plaintiff*

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

13

MALIK BROWN, on Behalf of Himself
and all Others Similarly Situated,

14

15

                         Plaintiff,
       v.

16

17

COMCAST CORPORATION,

18

                         Defendant.

19

20

21

22

23

24

25

26

27

28

Case No.  16-cv-00264-AB (SPx)

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND
STAY PROCEEDINGS**

Hon. Andre Birotte, Jr.

1
2

# TABLE OF CONTENTS

PAGE(S)

3
4
5

I.      INTRODUCTION ............................................................................. 1

II.     PLAINTIFF IS NOT BOUND BY AN UNRELATED
        CONTRACT WITH A THIRD PARTY ........................................... 2

        A.    Liberal Federal Policy Favoring Arbitration Does Not
              Apply To Question Of Whether A Particular Party Is
              Bound By An Agreement .................................................... 2

        B.    Equitable Estoppel Of Third Parties In An Arbitration
              Context Must Be Decided Within The "Narrow Confines"
              of *Comer* and *DuPont* ......................................................... 3

        C.    Plaintiff Is Not Bound By The Agreement Because His
              Claims Are Wholly Unrelated To The Agreement And He
              Did Not "Knowingly Exploit" The Agreement ...................... 4

III.    THE AGREEMENT IS PROCEDURALLY AND
        SUBSTANTIVELY UNCONSCIONABLE .................................... 10

IV.     CONCLUSION ............................................................................... 11

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

# TABLE OF AUTHORITIES

**PAGE(S)**

3

**CASES**

4

5

*Ajamian v. CantorCO2e, L.P.,*
  203 Cal. App. 4th 771 (2012)............................................................10, 11

6

*Bridge v. Credit One Financial,*
  2016 WL 1298712 (D. Nev. Mar. 31, 2016)..........................................8, 9

7

8

*Chastain v. Union Sec. Life Ins. Co.,*
  502 F. Supp. 2d 1072 (C.D. Cal. Aug. 3, 2007)......................................2, 3

9

10

*Comer v. Micor,*
  278 F. Supp. 2d 1030 (N.D. Cal. 2003) ...................................................5

11

12

*Comer v. Micor, Inc.,*
  436 F.3d 1098 (9th Cir. 2006)........................................................ Passim

13

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
  *S.A.S.,*
  269 F.3d 187 (3d Cir. 2001) ...................................................................3, 4

14

15

*Fleetwood Enters., Inc. v. Gaskamp,*
  280 F.3d 1069 (5th Cir. 2002)..................................................................2

16

17

*Goldman v. KPMG LLP,*
  173 Cal. App. 4th 209 (2009).....................................................................8

18

19

*In re Jiffy Lube Int'l Inc., Text Spam Litig.,*
  847 F. Supp. 2d 1253 (S.D. Cal. 2012) ....................................................8

20

21

*Kairy v. Supershuttle Int'l, Inc.,*
  2012 WL 4343220 (N.D. Cal. Sept. 20, 2012)...............................9, 10, 11

22

23

*Kingsley Capital Mgmt., LLC v. Sly,*
  820 F. Supp. 2d 1011 (D. Ariz. Sept. 30, 2011)........................................4

24

*Larson v. Speetjens,*
  2006 WL 2567873 (N.D. Cal. Sept. 5, 2006).........................................4, 9

25

26

*Losapio v. Comcast Corp.,*
  2011 WL 1497652 (N.D. Ga. Apr. 19, 2011) ...........................................9

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Mundi v. Union Sec. Life Ins. Co.,*
   555 F.3d 1042 (9th Cir. 2009)..................................................................2, 3, 7

*Murphy v. DirecTV, Inc.,*
   724 F.3d 1218 (9th Cir. 2013)..................................................................3, 4, 6

*Pereira v. Santander Consumer USA, Inc.,*
   2012 WL 4464893 (N.D. Ill. Apr. 2, 2012) ...............................................6

*Sanders v. Comcast Cable Holdings, LLC,*
   2008 WL 150479 (M.D. Fla. Jan. 14, 2008) .............................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

Plaintiff filed this class action case against Defendant Comcast Corporation ("Comcast") alleging violations of the Telephone Consumer Protection Act because, in 2014 and 2015, Comcast was robo-dialing Plaintiff's cellular telephone and leaving pre-recorded telemarketing messages promoting its services.  Class Action Complaint ("Compl.") ¶ 14.  Plaintiff alleges that prior to the calls in question, he never had any contact with Comcast, in writing or otherwise, and had never been a Comcast customer.  *Id*. ¶ 12.  Instead of responding to or answer Plaintiff's allegations, Comcast now attempts to frustrate Plaintiff's day in court by urging this Court to compel Plaintiff to arbitrate his claims pursuant to a purported contract (the "Agreement") signed by a third party, Brenda Stewart, and Comcast, in 2011, years before the calls at issue.  For the first time, as discussed in Comcast's brief, Plaintiff has learned that purportedly Ms. Stewart, unbeknownst to Plaintiff, provided Comcast with Plaintiff's cellular telephone when she set up her Comcast account.  *See gen*. Brown Decl. ¶¶ 2-21 (stating that Plaintiff never provided Comcast his cellular telephone number, never knew that anyone else provided his cell phone number to Comcast, never consented to his number being given to Comcast, and more generally describing his relationship with Ms. Stewart and his stay at her residence in 2012). Based on Ms. Stewart's provision of Plaintiff's cellular telephone number to Comcast in 2011, and the fact that Plaintiff once visited Ms. Stewart *one year later in 2012*, Comcast argues that the legality of its 2014 and 2015 telemarketing calls placed to Plaintiff's cellular telephone number must be decided by an arbitrator.  *See gen*. Def's Br.  Common sense and consistent Ninth Circuit authority counsels that staying over at a friends' residence and watching TV does not bind a person to mandatory arbitration when the friend's cable company decides to make unlawful robo-calls years down the road.  But common sense is not the Comcast way.  Instead, Comcast urges the Court to ignore binding Ninth Circuit authority – by not citing it even once

– in creating a new exception to the "general principle that only those who have agreed to arbitrate are obliged to do so." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009).

## II. PLAINTIFF IS NOT BOUND BY AN UNRELATED CONTRACT WITH A THIRD PARTY

### A. Liberal Federal Policy Favoring Arbitration Does Not Apply To Question Of Whether A Particular Party Is Bound By An Agreement

Defendant boldly titles a section of its brief "The FAA Applies and Establishes a Strong Policy Favoring Arbitration." Def's Br. at 6. The Ninth Circuit unquestionably holds otherwise. *See Comer v. Micor, Inc*., 436 F.3d 1098, 1104 n. 11 (9th Cir. 2006) (holding that where the question concerns "whether a particular *party* is bound by the arbitration agreement … the liberal federal policy regarding the scope of arbitrable issues is inapposite.") (emphasis in original).

"As a general matter, arbitration is a matter of contract interpretation and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Chastain v. Union Sec. Life Ins. Co*., 502 F. Supp. 2d 1072, 1075 (C.D. Cal. Aug. 3, 2007) (quotations omitted). "Despite this policy, it is well-established that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to arbitrate even though the signatory and nonsignatory lack an agreement to arbitrate." *Id*. "In this circumstance, however, the federal policy favoring arbitration falls away: 'The question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Id*. (quoting *Comer*, 436 F.3d at 1104 n. 11). *See also Comer*, 436 F.3d at 1104 n. 11 (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) for the rule that "The federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between

the parties; instead ordinary contract principles determine who is bound.") (internal quotations omitted).

Here, the question is whether Plaintiff, a non-signatory to an Agreement between a third-party customer and Comcast, is nevertheless bound by the Agreement.  The *scope* of the arbitration agreement is inapposite.  As such, "the Court is not bound by any stated policy encouraging arbitration in reviewing Defendant's motion."  *Chastain*, 502 F. Supp. 2d at 1075.  *See also id.*, at 1075 n. 2 (noting that the Ninth Circuit's decision in *Comer* "squarely addressed the issue before this Court, namely, whether the policy established by the FAA applied in adjudicating the question of whether a non-signatory was subject to a contractual arbitration clause.").

> **B.** **Equitable Estoppel Of Third Parties In An Arbitration Context Must Be Decided Within The "Narrow Confines" of *Comer* and *DuPont***

"Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1239 (9th Cir. 2013). The Ninth Circuit has "examined two types of equitable estoppel in the arbitration context."  *Mundi*, 555 F.3d at 1046.  "In the first, a nonsignatory may be held to an arbitration clause 'where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'"  *Id.* (quoting *Comer*, 436 F. 3d at 1101) (internal quotations omitted).  "Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory 'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.'"  *Id.* (quoting *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001) (hereafter,

"DuPont").  [I]n light of the general principle that only those who have agreed to arbitrate are obliged to do so," the Ninth Circuit has refused to "exten[d] the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in these two lines of cases."  *Id*.  *See also Kingsley Capital Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011, 1024 (D. Ariz. Sept. 30, 2011) (noting that "[t]he narrow approach typically arises where … the signatory seeks to compel arbitration with a non-signatory that has 'knowingly exploit[ed] the agreement containing the arbitration clause despite having never signed the agreement.'") (quoting *Comer*, 436 F. 3d at 1101).

   "Because [Comcast] is invoking equitable estoppel against a nonsignatory, it is the first line of cases that is relevant."  *Comer*, 436 F. 3d at 1101-02.  Tellingly, Comcast does not cite to *Comer*, *Murphy*, and *Mundi* in its argument even once, even though these are the only cases where the Ninth Circuit has addressed the issue of equitable estoppel in the context of a signatory attempting to bind a non-signatory to a contract signed with a third party.  In each of these cases, the Ninth Circuit held that equitable estoppel did not mandate that the plaintiffs arbitrate their claims.  The Court should find no occasion to expand the "narrow approach" delineated by the Ninth Circuit here and create a new exception to the general rule that "only signatories to an arbitration agreement are obligated to submit to binding arbitration."  *Murphy*, 724 F.3d 1218 at 1239.

   **C.   Plaintiff Is Not Bound By The Agreement Because His Claims Are Wholly Unrelated To The Agreement And He Did Not "Knowingly Exploit" The Agreement**

   The facts of *Comer*, the leading Ninth Circuit case on the issue of equitable estoppel in the context of a signatory attempting to enforce an arbitration agreement against a nonsignatory, are instructive.  In *Larson v. Speetjens*, 2006 WL 2567873, at *6 (N.D. Cal. Sept. 5, 2006), one of the cases relied on by Defendant here, the court discussed the factual predicate and reasoning of Comer at length:

In *Comer*, plaintiff was a participant in [the defendant's] pension and profit sharing plans.  He brought an ERISA claim against [the defendant], the trustees of the plans, and Smith Barney, the plans' investment advisor, with whom the trustees maintained accounts on behalf of the plans.  Smith Barney moved to compel arbitration based on the arbitration clause in its investment advisor agreements with the trustees.  [The court] held that plaintiff was not bound by the arbitration clause, because plaintiff's right of action for breach of fiduciary duty under ERISA was distinct from that which the trustees or the plans might have either under ERISA or under the common law for breach of contract …

The Ninth Circuit affirmed this Court's ruling.  In doing so, the Ninth Circuit noted that the "insurmountable hurdle for Smith Barney" was the lack of evidence that [the plaintiff] "*knowingly exploit[ed]* the agreement[s] containing the arbitration clause[s] despite having never signed the agreement[s]."  The Ninth Circuit explained that "[p]rior to his suit, [the plaintiff] was simply a participant in trusts *managed by others* for his benefit."  Thus, "Smith Barney's attempt to showhorn [the plaintiff's] status as a *passive participant* in the plans" into his knowing exploitation of the investment management agreements between the trustees and Smith Barney failed.

*Id*. (quoting *Comer v. Micor*, 278 F. Supp. 3d 1030 (N.D. Cal. 2003) and *Comer*, 436 F.3d at 1102) (citations omitted) (emphasis in original).

Here, *at most*, Plaintiff was, for a brief period of time in 2012, a "passive participant" between whatever services agreement Brenda Stewart and Comcast may have had in 2012 due to a television having been placed in a common living room. Plaintiff states that he had no knowledge of any services agreements Ms. Stewart has or may have had with any cable provider, has never consented to his phone number being shared with Comcast, has never paid for any cable services at that residence, and has never been informed that his number was ever provided to Comcast.  *See gen*. Brown Decl.  Indeed, the calls at issue in the Complaint occurred *years* after Plaintiff visited Ms. Stewart.  *Id*. ¶ 4.  Further, the purported Agreement was entered into between Ms. Stewart and Comcast *a year prior to* the date that Plaintiff visited Ms. Stewart.  It would be a far stretch to say that Plaintiff "knowingly exploited" the agreement between Comcast and Ms. Stewart.

Pursuant to *Comer*, courts also at times look to whether a non-signatory's claims arise out of the third-party agreement, such that the non-signatory is attempting to take advantage of some terms while seeking to avoid the arbitration provision. *See Murphy*, 724 F.3d at 1229 ("This rule reflects the policy that a [party] may not, on the one hand, seek to hold [an opponent] liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the [party] is a non-signatory."). Here, Plaintiff's tort-based TCPA claims in no way arise out of the Agreement and he is not attempting to enforce any provisions of the contract between Ms. Stewart and Comcast. *See Comer*, 436 F.3d at 1102 ("Prior to this suit, Comer was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, and not the investment management agreements."). Comcast's "attempt to shoehorn [Plaintiff's] status as [having potentially years ago watched Ms. Stewart's television] into his 'knowing[] exploitation' of the [Agreement] fails." *Id*.

The facts of this case are most closely analogous to those presented in *Pereira v. Santander Consumer USA, Inc*., 2012 WL 4464893 (N.D. Ill. Apr. 2, 2012). In *Pereira*, the plaintiff's former husband obtained a loan to purchase an automobile. *Pereira*, 2012 WL 4464893 at *1. "Sometime thereafter, [the husband] defaulted on his loan obligations" and the defendant allegedly called the plaintiff's cell phone "in an effort to collect payments due under the loan agreement." *Id*. Like here, the plaintiff alleged that those calls violated the TCPA. *Id*. The defendant argued that the plaintiff was "equitably estopped" from challenging the arbitration provision contained in the loan agreement that her former husband signed. *Id*. The defendant even argued that plaintiff "directly benefited from the loan agreement because she

drove the automobile acquired through the loan." *Id*.  The court rejected the

defendant's contention with impassioned language:

> This benefit is legally insufficient to compel arbitration.  Estoppel bars a party who claims the direct benefit *of a contract* from asserting that she is not bound by the arbitration clause contained in that contract.  In other words, a party will be estopped from refusing to arbitrate while simultaneously seeking to enforce another provision in the contract containing the arbitration provision … Here, [the plaintiff] is not seeking to enforce any provision of [her former husband's] loan agreement.  Her complaint, which alleges a violation of the TCPA, makes no mention of [her former husband], the automobile, or the loan agreement.  The alleged use of [her former husband's] automobile is a benefit far too removed from the agreement for this Court to compel arbitration.  "Sometimes I've believed as many as six impossible things before breakfast."  Lewis Carrol, Through the Looking Glass 45 (1st Edition Media 2009).  Not today.

*Id*. (citations omitted) (emphasis in original).  Here, Plaintiff's Complaint makes no

mention of Brenda Stewart, any purported agreement between Ms. Stewart or

Comcast, or any cable services that Ms. Stewart may have received at any time.

Having potentially watched some television at a friend's residence years ago is surely

a "benefit far too removed from the agreement for this Court to compel arbitration."

*Id*.[1]  *See Mundi*, 555 F. 3d at 1047 (declining to compel arbitration where the

resolution of a non-signatory's claim "does not require the examination of any

provision of the [agreement].").

Extending Comcast's reasoning for compelling arbitration in this case would

lead to absurd results.  Would every person that has ever asked a friend for a ride to

work be bound by whatever arbitration agreement the friend may have entered into

between himself and the car dealership?  Would such a person still be bound by the

---

[1] Comcast's conclusory statement that the calls in question were "made for purposes of debt collection on the Account" are directly contradicted by Plaintiff's allegations.  Plaintiff alleges that "Defendant would leave a prerecorded message promoting its services or informing Plaintiff that Defendant would be in the area soon or verifying appointment times."  Compl. ¶ 14.  These essentially amount to telemarketing calls, and have nothing to do with any purported effort by Comcast to collect a debt owed under the Agreement.

1   agreement if the friend defaults on the car payment years down the road and the

2   dealer starts calling the friend's contacts using an autodialer?  Would a San Francisco

3   visitor viewing the city's famous murals be bound by an arbitration agreement

4   between a building owner and the muralist?  Surely, not.

5        The fact that Ms. Stewart may have provided Plaintiff's cell phone number to

6   Comcast without his consent or knowledge is inapposite.  In evaluating the

7   application of equitable estoppel, the focus is on what the party seeking to avoid

8   enforcement of the agreement did and what purposeful benefit the party may have

9   derived from the contract.  *See Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221

10  (2009) (holding that "if [plaintiffs'] claims against [defendants] are asserted without

11  reliance on any obligations imposed by the operating agreements …, they have

12  engaged in no conduct that is 'contrary to equity,' and there is no basis in equity for

13  requiring them to arbitrate with parties with whom they have no arbitration

14  agreement.").  Here, Comcast at no point contends that Plaintiff ever contacted

15  Comcast for any reason and does not put forth any facts suggesting that Plaintiff

16  knew that his number was provided to Comcast.  As summed up by Judge Miller in *In

17  re Jiffy Lube Int'l Inc., Text Spam Litig*., 847 F. Supp. 2d 1253, 1263 (S.D. Cal.

18  2012), "[t]he existence of the original contract may have been the 'but for' cause of

19  the TCPA violation, but this alone is not necessarily enough to establish that the

20  claim arises out of or relates to the contract."  *See also In re Jiffy Lube*, 847 F. Supp.

21  2d at 1263 ("Though it seems likely that [the plaintiff] provided his telephone number

22  when signing the contract, it is unclear that later use of that number to commit a tort

23  can be said to relate to the contract.").

24        None of the cases cited by Comcast counsel otherwise.  For instance, Comcast

25  relies heavily on *Bridge v. Credit One Financial*, 2016 WL 1298712 (D. Nev. Mar.

26  31, 2016) as supposedly a case where the court "compelled arbitration under

27  circumstances similar to the present case."  Def's Br. at 9.  As an initial matter,

28

*Bridge* is on appeal to the 9th Cir. and may have been wrongly decided.  In any case, in *Bridge*, the plaintiff, a non-signatory, purposely "called [the defendant's] toll-free automated account information system using his own cell phone and without his mother's knowledge." *Bridge*, 2016 WL 1298712, at *1.  The plaintiff proceeded to input his mother's, the account holders', account information and personal information (including credit card number and social security number) and essentially assumed the identity of his mother.  *Id*.  "Upon successful authentication of the account and social security information, the phone number Bridge was using became associated with Bridge's mother's account."  *Id*.  The court noted that the plaintiff directly benefited from calling the defendant as he was trying to straighten out his mother's account after her passing, and that he voluntarily gave the defendant his cell phone number.  *See id*.  None of these facts are present here.  Plaintiff never gave Comcast his phone number, never called Comcast, and never contacted Comcast for his benefit, or otherwise.  *See gen*. Brown Decl. ¶¶ 9-21.

Similarly, in every other case cited by Comcast in support of its equitable estoppel theory, the courts held that the plaintiffs' claims were intertwined with and arose out of the third-party agreements.  *See Larson*, 2006 WL 2567873, at *7 ("Plaintiffs' entire case hinges on the attorney-client relationship created by the Agreements.  Plaintiffs' claims are inextricably intertwined with the Agreements, as they are based on Defendants' alleged breach of their fiduciary duty that was created by the Agreements."); *Kairy v. Supershuttle Int'l, Inc*., 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012) ("The FLSA and Labor Code claims require that the secondary drivers specifically performed under the contract."); Def's Br. at 8-9. Other cases cited by Defendant are inapposite altogether, as they concern claims brought by *signatories to valid contracts against other signatories*.  *See Losapio v. Comcast Corp*., 2011 WL 1497652, at *3 (N.D. Ga. Apr. 19, 2011) (case brought by a Comcast subscriber who was mailed the agreement in question and paid the bills on

the account); *Sanders v. Comcast Cable Holdings, LLC*, 2008 WL 150479, at *6 (M.D. Fla. Jan. 14, 2008) (case brought by Comcast subscribers who failed to rebut the presumption that they received the arbitration notice); Def's Br. at 9.

## III.   THE AGREEMENT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

Although, for the reasons discussed above, Plaintiff cannot be bound by the Agreement between Ms. Stewart and Comcast based on an equitable estoppel theory, the Court should not enforce the Agreement against Plaintiff for the independent reason that it is both procedurally and substantively unconscionable under California law.

"Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 793 (2012). "Both components must be present, but not in the same degree; by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." *Id*.

Here, because the Agreement is "an adhesion contract" that was "based on a standardized form, drafted and imposed by a party of superior bargaining strength," the contract is procedurally unconscionable. *Id*. at 793. Indeed, as a non-signatory third-party to the contract, Plaintiff did not even have the power to negotiate the contract, accept it, or reject it. *Kairy*, 2012 WL 4343220, at *7 ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.").

"Substantive unconscionability arises when a contract imposes unduly harsh, oppressive, or one-sided terms." Courts routinely hold that arbitration agreements are substantively unconscionable where the fees and potential attorney fees are not

mutual.  *See, e.g.* *Ajamian*, 203 Cal. App. 4th at 796-77 (holding that the lack of mutuality with respect to attorney fees makes the arbitration provision substantively unconscionable and unenforceable "on that basis alone."; *Kairy*, 2012 WL at *8 ("the Court finds that the fee splitting can be unconscionable where fees and costs are so prohibitively expensive as to deter arbitration.").

Here, Defendant claims that it was calling Plaintiff in an attempt to collect debts owed under the Agreement.  But on page 3 of the Agreement, it states that "If we use a collection agency or attorney to collect money owed by you, you agree to pay the reasonable costs of collection.  These costs include, but are not limited to, any collection agency's fees, reasonable attorneys' fees, and arbitration or court costs."  Salcedo Decl., Ex. B. at 3.  No provision states that Plaintiff could recoup attorneys' fees or costs should Plaintiff prevail in Defendant's debt collection efforts or arbitration.  Further, even for non-debt related arbitration, the Agreement only allows a plaintiff to recoup attorneys' fees and costs associated with filing an appeal, whereas Comcast may recover attorneys' fees "IF THE ARBITRATION PROCEEDING IS DECIDED IN COMCAST'S FAVOR."  *Id.* at 16 (Section h. titled "Payment of Arbitration Fees and Costs").  This is a classic case of the absence of mutuality in an arbitration provision, and, as such, the arbitration provision is both substantively and procedurally unconscionable and cannot be unforced.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Comcast's motion in its entirety.  On the chance that the Court cannot dispose of Defendant's motion based on the factual record, Plaintiff requests an opportunity to take discovery regarding the purpose of Comcast's calls to Plaintiff and how Comcast obtained Plaintiff's phone number.

1

Dated:  May 16, 2016                    Respectfully submitted,

2

3                                       **BURSOR & FISHER, P.A.**

4                                       By:   _/s/ Yeremey Krivoshey_
                                              Yeremey Krivoshey
5
                                        Scott A Bursor (State Bar No. 276006)
6                                       L. Timothy Fisher (State Bar No. 191626)
                                        Annick M. Persinger (State Bar No. 272996)
7                                       Yeremey O. Krivoshey (State Bar No.295032)
                                        1990 North California Blvd., Suite 940
8                                       Walnut Creek, CA  94596
                                        Telephone: (925) 300-4455
9                                       Email: scott@bursor.com
10                                              ltfisher@bursor.com
                                                apersinger@bursor.com
11                                              ykrivoshey@bursor.com

12                                      _Attorneys for Plaintiff_

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28